UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ZENO CHARLES BUDD,

          Petitioner,                               Hon. Richard Alan Enslen

v.                                          Case No. 5:02-CV-170

MICHIGAN DEPARTMENT
OF CORRECTIONS,

          Respondent.

_____/


## REPORT AND RECOMMENDATION

       This matter is before the Court on Budd's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the Court recommends that Budd's petition be **denied**.


## BACKGROUND

       In approximately 1976, Petitioner purchased property on land contract from John Thompson's parents. (Trial Transcript, December 9, 1998, 88-91, 112, 115). In approximately 1995, "legal problems" relating to this transaction arose and Petitioner was eventually evicted from the property. *Id.* at 91-92. Following Petitioner's eviction, the residence remained unoccupied. *Id.* at 92-95.

       In early 1998, Thompson, who by this time had obtained control of the property, learned that Petitioner had been witnessed on the property. *Id.* at 94. On January 18, 1998, at approximately

10:00 a.m., Thompson and Ivan Robinson arrived at the residence to disable the furnace and board up the windows.  *Id.* at 94, 143-44.  Unknown to Thompson and Robinson, Petitioner was residing in the house.  As soon as Thompson and Robinson arrived, Petitioner leaned out of an upstairs window - holding a rifle - and informed the pair that "guys get shot for trespassin'."  *Id.* at 95-100, 144-48.  Petitioner then asked, "which one of you want it first."  *Id.* at 148.

Thompson and Robinson immediately departed the property to telephone the police.  *Id.* at 100-09, 148-49.  While Thompson (who was standing outside of a neighbor's residence) was talking on his cell phone, a rifle was fired in his direction.  *Id.* at 109-10, 149.  The bullet passed approximately 20 feet from where Thompson was standing.  *Id.* at 109-10.  Thompson immediately went inside the neighbor's residence while Robinson departed in his vehicle.  *Id.* at 110-11, 149-51.  As Robinson passed by Thompson's property he saw Petitioner hanging out of the same upstairs window with a rifle in his hands.  *Id.* at 149-51.

Petitioner was charged with four counts of felonious assault, being a felon in possession of a firearm, and possession of a firearm during the commission of a felony.  Following a preliminary examination, Petitioner was bound over for trial on the charges of being a felon in possession of a firearm and possession of a firearm during the commission of a felony.  (Preliminary Examination Transcript, April 28, 1998, 162-68).  Following a jury trial, Petitioner was convicted of both charges.  (Trial Transcript, December 11, 1998, 111-12).  Petitioner was sentenced to 12-90 months on the felon in possession of a firearm conviction and 2 years (to be served consecutively) on the possession of a firearm during the commission of a felony conviction.  (Sentencing Transcript, January 15, 1999, 47-48).

Petitioner then filed in the Michigan Court of Appeals an "emergency interlocutory appeal" seeking the "peremptory reversal" of his convictions.  Petitioner also filed a separate "petition

for habeas corpus" in the Michigan Court of Appeals.    The court dismissed both pleadings for Petitioner's "failure to pursue the case in conformity with the rules." *Budd v. Clinton County Judge*, No. 216413, Order (Mich. Ct. App., Feb. 18, 1999); *Budd v. Clinton County Sheriff*, No. 216620, Order (Mich. Ct. App., Mar. 3, 1999).  Petitioner did not appeal either of these determinations to the Michigan Supreme Court.  (Dkt. #43).

While his "emergency interlocutory appeal" and "petition for habeas corpus" were still pending, Petitioner filed in the Michigan Court of Appeals a motion to appeal in which he asserted the following claims:

I.      Both the 65-2 District Court and the 29th Circuit Court violated the rights of Mr. Budd by failing to quash the complaint in this action.

II.     Both the 65-2 District Court and the 29th Circuit Court violated the rights of Mr. Budd by failing to quash the warrant in this action.

III.    Both the 65-2 District Court and the 29th Circuit Court violated Mr. Budd's right to freely travel when a condition was placed on the P.R. bond that required Mr. Budd not to drive an automobile.

IV.     The 29th Circuit Court violated Mr. Budd's rights by failing to quash the information and supplemental information.

V.      The 29th Circuit Court violated the rights of Mr. Budd by failing to order the prosecutor to provide him with a bill of particulars.

VI.     The 29th Circuit Court committed a trespass against the rights of Mr. Budd by failing to dismiss this action.

VII.    The 29th Circuit Court violated Mr. Budd's rights when it ordered him into another county for a pre-trial hearing.

VIII.   The 29th Circuit Court should have allowed Mr. Budd
out-of-pocket travel expenses after requiring him as a
condition of the P.R. bond not to drive a motor vehicle.

IX.    Judge Jeffrey L. Martlew violated Mr. Budd's due process
rights by failing to recuse himself as a bias and prejudicial
judge.

X.     The 29th Circuit Court violated Mr. Budd's right to a fair
trial by failing to suppress all unlawful or unlawfully
obtained evidence.

XI.    The 29th Circuit Court violated Mr. Budd's right to
access the courts by revoking his bond after conviction
without reason or cause.

XII.   The 29th Circuit Court denied Mr. Budd, a pro per
litigant, access to legal books, legal advisor, paper, pencil,
stamped envelopes, and even his own research material
and file, just to keep him from filing pleadings.

The court dismissed Petitioner's appeal "for failure to pursue the case in conformity with

the rules." *People v. Budd*, No. 216104, Order (Mich. Ct. App., Feb. 4, 1999).  Petitioner moved in the

Michigan Supreme Court for reconsideration of this dismissal, a request which was denied.  *People v.*

*Budd*, No. 216104, Order (Mich., Mar. 11, 1999).

Petitioner subsequently pursued, with the assistance of counsel and in conformity with

the relevant court rules, an appeal in the Michigan Court of Appeals in which he asserted the following

claims:

I.     Defendant's convictions and sentences for both being a
felon in possession of a firearm and felony-firearm violate
the United States and Michigan constitutional protection
against double jeopardy.

II.    The prosecutor shifted the burden of proof by telling the
jury, during closing argument, that Defendant did not
offer his whereabouts on the date of the alleged crime.

III.    The prosecutor's decision to analogize the instant offense to the "Alamo" during his closing and rebuttal arguments denied Defendant a fair trial by improperly prejudicing the jury.

IV.    Mr. Budd is entitled to a resentencing before a different judge because the trial judge based his sentence in part on Mr. Budd's refusal to admit guilt, where he consistently asserted his innocence at trial and at sentencing.

V.    Mr. Budd is entitled to a corrected pre-sentence report, where the inaccuracies in his current report are likely to negatively impact his consideration and treatment by the Department of Corrections.[1]

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Budd*, No. 217194, Opinion (Mich. Ct. App., May 1, 2001). Asserting the following claims, Petitioner moved in the Michigan Supreme Court for leave to appeal this determination:

I.    Appellant was not a felon for purposes of the statute he was charged under - "felon in possession" MCL 750.224f.

II.    The "felon in possession" statute, MCL 750.224f, is unconstitutional as applied to appellant.

III.    Appellant was denied a fair trial where both the district and circuit court judge allowed him to waive his constitutional right to counsel and proceed pro per without informing him of the dangers and disadvantages of self-representation or establishing that the waiver was voluntary, knowing, and intelligent.

IV.    The district court judge violated the due process rights of the appellant when he bound the appellant over to the circuit court on charges he was not officially charged with and no preliminary examination was held on.

---

[1] While this appeal was pending, Petitioner filed another petition for writ of habeas corpus which was dismissed for lack of jurisdiction. *Budd v. Michigan Dep't of Corrections*, Order, No. 228091 (Mich. Ct. App., Sep. 22, 2000). Petitioner did not appeal this determination to the Michigan Supreme Court.

V.      "Felony firearm," MCL 750.227b, cannot be attached to "felon in possession," MCL 750.224f, without violating the appellant's constitutional protected rights and the intent of the legislature.

VI.     The trial judge violated the due process rights of the appellant, after the appellant, by proper motion, requested that the trial recuse himself prior to trial because the appellant filed a federal civil lawsuit against the trial judge.

VII.    Appellant was denied his due process rights when he timely requested that the prosecutor subpoena res gestae witnesses and the judge refused to compel the prosecutor to comply with the request.

VIII.   Appellant was denied a fair trial when the trial judge instructed the jury that "as a matter of law malicious destruction of property over $100 (the appellant's 1991 conviction) is a specified felony for purposes of "felon in possession."

IX.     Appellant was denied a fair trial when the trial judge informed the jury "there does not have to be a firearm presented into evidence as long as you believe the witnesses believe they saw one.

X.      Appellant was denied a fair trial when the only prosecution witness that could identify the appellant had a $100,000 interest in seeing the appellant convicted.

XI.     Appellant was denied access to the court when he timely filed (after dismissing his first court appointed appellate counsel) a motion under MCR 6.431(A)(2) for a new trial (based on new evidence not discovered until after trial) and the trial judge adjourned the hearing sine die and has denied the future motions of the appellant without a hearing.

XII.    Appellant was denied access to the court and due process of law when he filed a motion under MCR 6.431(B) requesting a motion hearing based on "new evidence" and other issues, to enlarge the record, and the trial court denied the motions without a hearing.

XIII.   Appellant was denied effective assistance of appellate counsel when the second court appointed appellate counsel refused to submit a petition for an evidentiary hearing or submit "dead bang ringer" issues in her brief to the appeals court.

XIV.   Appellant was denied effective assistance of appellate counsel when the third court appointed appellate counsel refused to amend and supplement the motion filed into the trial court by the appellant for an evidentiary hearing, after the trial judge offered to allow the counsel on record to do so.

The court denied Petitioner's request for leave to appeal. *People v. Budd*, No. 119284, Order (Mich., Oct. 29, 2001). On August 17, 2002, Petitioner filed in the trial court a motion for relief from judgment, pursuant to Michigan Court Rule 6.500, which was denied on October 30, 2002. *People v. Budd*, No. 98-6493-FH, Order (Clinton County Cir. Ct., Oct. 30, 2002). On November 11, 2002, Budd submitted the present petition for writ of habeas corpus, asserting the following claims:

I.   Petitioner was not a felon for purposes of the statute he was charged under, "felon in possession," MCL 750.224f.

II.   The "felon in possession" statute MCL 750.224f is unconstitutional as applied to Petitioner.

III.   Petitioner was denied a fair trial where both the district and circuit court judge allowed him to waive his constitutional right to counsel and proceed pro per, without informing him of the dangers and disadvantages of self-representation or establishing that the waiver was voluntary, knowing, and intelligent.

IV.   The district court judge violated the due process rights of the petitioner when he bound the petitioner over to the circuit court on charges he was not lawfully charged with and no preliminary examination was held on.

V.   "Felony firearm," MCL 750.227b, cannot be attached to "felon in possession," MCL 750.224f, without violating

the petitioner's constitutional protected rights and the intent of the legislature.

VI.     The trial judge violated the due process rights of the petitioner after the petitioner, by proper motion, requested that the trial judge recuse himself, prior to trial, because the petitioner filed a federal civil lawsuit against the trial judge.

VII.    Petitioner was denied his due process rights when he timely requested that the prosecutor subpoena res gestae witnesses and the judge refused to compel the prosecutor to comply with the request.

VIII.   Petitioner was denied a fair trial when the trial judge instructed the jury that "as a matter of law malicious destruction of property over $100 (Petitioner's 1991 conviction) is a specified felony for purposes of "felon in possession."

IX.     Petitioner was denied a fair trial when the trial judge informed the jury "there does not have to be a firearm presented into evidence as long as you believe the witnesses believe they saw one."

X.      Petitioner was denied a fair trial when the only prosecution witness that could identify the petitioner had a $100,000 interest in seeing the petitioner convicted.

XI.     Petitioner was denied access to the court when he timely filed (after dismissing his first court appointed appellate counsel) a motion under MCR 6.431(A)(2) for a new trial (based on new evidence not discovered until after trial) and the trial judge adjourned the hearing sine die and has denied the future motions of the petitioner without a hearing.

XII.    Petitioner was denied access to the court and due process of law when he filed a motion under MCR 6.431(B) requesting a motion hearing based on "new evidence" and other issues, to enlarge the record, and the trial court denied the motions without a hearing.

XIII.   Petitioner was denied effective assistance of appellate counsel when the second court appointed appellate counsel refused to petition for an evidentiary hearing or submit "dead bang ringer" issues in her brief to the appeals court.

XIV.   Petitioner was denied effective assistance of appellate counsel when the third court appointed appellate counsel refused to amend and supplement the motion filed into the trial court by the petitioner for an evidentiary hearing after the trial judge offered to allow the counsel on record to do so.

## STANDARD OF REVIEW

Budd's petition, filed November 11, 2002, is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

The deferential standard articulated by the AEDPA, however, does not apply if the state has failed altogether to review a particular claim. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts a *de novo* review. *See McKenzie*, 326 F.3d at 727; *see also Wiggins v. Smith*, 123 S. Ct. 2527, 2542 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## **ANALYSIS**

### I.        **Exhaustion**

Before seeking habeas relief in the federal courts, Petitioner must first exhaust in the state courts those claims upon which habeas relief is sought. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842

(1999); 28 U.S.C. § 2254(b)(1). Exhaustion requires that Petitioner provide the "highest court in the state" a "full and fair opportunity" to pass upon his claim that his federal rights have been violated. *Rust v. Zent* 17 F.3d 155, 160 (6th Cir. 1994); *see also*, *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (petitioners must "fairly present" their federal habeas claims to the state courts).

While exhaustion requires that the petitioner present his claims to the state's highest court, presenting his claims to *only* the state's highest court may not suffice. The Michigan Supreme Court conducts discretionary review of appeals by application for leave to appeal. In *Castille v. Peoples*, 489 U.S. 346 (1989), the United States Supreme Court held that presentation of an issue for the first time on discretionary review to the state's highest court does not satisfy the "fair presentation" requirement where the court declines to exercise its discretion to review the matter. *Id.* at 351. Applying *Castille*, the Sixth Circuit has likewise determined that the exhaustion requirement is not satisfied where a petitioner first presents a claim on discretionary appeal to the state's highest court, unless that court opts to review the merits of the claim. *See*, *e.g.*, *Clinkscale v. Carter*, 375 F.3d 430, 440 (6th Cir. 2004); Hall v. Huffman, 2000 WL 1562821 at *3 (6th Cir., Oct. 11, 2000); *Greene v. Lafler*, 2004 WL 2567628 at *3 (E.D. Mich., Nov. 2, 2004).

While Petitioner presented all fourteen of his habeas claims to the Michigan Supreme Court in his motion for leave to appeal, only one of these claims (habeas claim V) was first presented to the Michigan Court of Appeals. In other words, thirteen of the claims advanced in the present petition were first (and only) presented on discretionary appeal to the Michigan Supreme Court - which declined to review the merits thereof. Except for claim V, therefore, Petitioner has failed to exhaust administrative remedies with respect to the claims presented in his petition for writ of habeas corpus.

-12-

Petitioner's failure to exhaust notwithstanding, the remaining claims may nonetheless be denied on the merits.  *See* 28 U.S.C. § 2254(b)(2).

**II.**          **Felon in Possession**  (Habeas Claims I, II, and VIII)

Petitioner asserts several claims related to his conviction for being a felon unlawfully in possession of a firearm.

Petitioner was convicted in 1991 of malicious destruction of property in excess of $100, a felony offense.  (Trial Transcript, December 9, 1998, 165-67).  Petitioner does not dispute the fact of this conviction or that such constituted a felony.  Petitioner claims, however, that the trial judge erred in instructing the jury that his 1991 conviction for malicious destruction of property constituted a "specified felony" as defined by the felon in possession statute.  Petitioner also advances the related argument that the restrictions articulated in the felon in possession law did not apply to him and that, therefore, it was improper to convict him of being a felon unlawfully in possession of a firearm.

Michigan law (in effect as of the date of the actions giving rise to Petitioner's convictions) provided the following:

> (1)     Except as provided in subsection (2), a person convicted of a felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until the expiration of 3 years after all of the following circumstances exist:
>
> (a)     the person has paid all fines imposed for the violation.
>
> (b)     the person has served all terms of imprisonment.

(c)    the person has successfully completed all conditions of probation or parole imposed for the violation.

(2)    A person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until all of the following circumstances exist:

(a)    the expiration of five years after all of the following circumstances exist:

(i)    the person has paid all fines imposed for the violation.

(ii)    the person has served all terms of imprisonment imposed for the violation.

(iii)    the person has successfully completed all conditions of probation or parole imposed for the violation.

(b)    the person's right to possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm has been restored pursuant to section 4 of Act No. 372 of the Public Acts of 1927, being section 28.424 of the Michigan Compiled Laws.

Mich. Comp. Laws § 750.224f(1)-(2) (1998).

This statute defined a "specified felony" as a felony involving the "the use, attempted use, or threatened use of physical force against the person or property of another."  Mich. Comp. Laws § 750.224f(6)(i) (1998).  The malicious destruction of property provision of which Petitioner was convicted in 1991 provided that "any person who shall wilfully and maliciously destroy or injure the

-14-

personal property of another. . .if the damage resulting from such injury shall exceed $100.00 shall be guilty of a felony."  Mich. Comp. Laws § 750.377a (1991).

In finding that Petitioner's 1991 malicious destruction of property conviction constituted a "specified felony," the trial court necessarily concluded that the malicious destruction of property involved "the use, attempted use, or threatened use of physical force against the person or property of another."  The Court discerns no error in this determination.  Petitioner's claim that the restrictions articulated in the felon in possession law were improperly applied to him is also without merit.

Following his 1991 malicious destruction of property conviction, Petitioner was sentenced to a term of probation.  (Trial Transcript, December 9, 1998, 165-67).  While Petitioner's term of probation ended in May 1994, he failed to successfully complete all the conditions thereof.  Specifically, Petitioner failed to pay the required $30 monthly oversight fee.  *Id.* at 168-70.

Because Petitioner failed to complete *all* the conditions of his probation, Petitioner was precluded from possessing a firearm under subsections (1) and (2) as detailed above.  Furthermore, even if Petitioner had completed all the conditions of his probation, he was still prohibited from possessing a firearm under subsection (2) because less than five years had passed from his release from probation until the commission of the instant offenses.  In sum, the restrictions articulated in the felon in possession statute applied to Petitioner precluding him from lawfully using or possessing a firearm on January 18, 1998.

Finally, Petitioner asserts that the law which prohibits certain felons from possessing firearms is an unconstitutional infringement upon the constitutional right to bear arms.  First, to the extent that Petitioner claims that the provision at issue violates the Michigan constitution, such cannot

serve as a basis for relief.  *See* 28 U.S.C. § 2254(a) (the federal courts can only consider habeas claims alleging violations of the Constitution, laws, or treaties of the United States).

As for Petitioner's claim that the felon in possession law violates the Second Amendment to the United States Constitution, such has been roundly rejected.  *See, e.g., Sanders v. United States*, 1996 WL 325534 at *2 (6th Cir., June 12, 1996) ("the constitutional right to bear arms is not absolute" and may be restricted so long as such restrictions do not impair "the maintenance of a well-regulated militia"); *Gardner v. Vespia*, 252 F.3d 500, 503 (1st Cir. 2001) (same); *United States v. Hager*, 22 Fed. Appx. 130, 132 (4th Cir., Nov. 14, 2001) (same).


III.        **Self-Representation**  (Habeas Claim III).

Petitioner claims that he was denied the right to a fair trial because he was permitted to represent himself at trial.  This claim is without merit.

The Sixth Amendment guarantees to every criminal defendant the right to the assistance of counsel at all critical stages of the criminal process.  *See Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004). The Constitution, however, "does not force a lawyer upon a defendant."  *Id.* at 87-88.  Thus, a criminal defendant may decline representation so long as his waiver of the right to the assistance of counsel is "knowing, voluntary and intelligent."  *Id.*  As the *Tovar* Court observed:

> We have described a waiver of counsel as intelligent when the defendant 'knows what he is doing and his choice is made with eyes open.'  We have not, however, prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel.  The information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.

*Id.* at 88.

Thus, the Court indicated that while the "warnings of the pitfalls of proceeding to trial without counsel" must be "rigorously" conveyed, "at earlier stages of the criminal process, a less searching or formal colloquy may suffice." *Id.* at 89.  The Court further observed that "in a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel." *Id.* at 92.

At his January 26, 1998 arraignment, Petitioner stated that he wished to represent himself. (Arraignment Transcript, January 26, 1998, 4).  The court, however, recognizing "the serious nature of the crime," appointed counsel to represent Petitioner. *Id.* at 8.

At the outset of the subsequent preliminary examination, the court again addressed the issue of representation.  Petitioner's appointed counsel stated that it was his understanding that Petitioner "wishes to proceed representing himself, as we are to be here in guidance capacity only." (Preliminary Hearing Transcript, February 5, 1998, 4).  Petitioner indicated his agreement with counsel's statement, at which point the court cautioned Petitioner that "I know you've represented yourself in other situations, but as the Judge hearing this case I would strongly encourage you to allow [appointed counsel] to represent you, at least through the preliminary examination." *Id.* at 4.  Petitioner responded that he wished to represent himself, but would take advantage of his appointed counsel's assistance. *Id.* at 5. Petitioner amply defended himself at the preliminary examination, securing the dismissal of the four counts of felonious assault. (Preliminary Examination Transcript, April 28, 1998, 162-68).

At a later pretrial conference, the Court again questioned Petitioner about representing himself.  With trial rapidly approaching, the court engaged in a more probing discussion of the topic as evidenced by the following exchange:

-17-

The Court:       I want to advise you, sir, that there's certain hazards to representing yourself in this case, and I want to make sure you understand those, and I want to make sure I've advised you of those and have your understanding on the record.  You are charged in this matter with an Information that charges, in Count 1, possession of a firearm when ineligible to do so because you have been convicted of a previous felony.   That's an offense that's punishable, I believe, by up to five years in the state prison and/or a fine of up to $5,000 plus court costs.  I understand you don't agree with the charge, but you do understand what you're charged with, right?

Petitioner:       I understand that's the Information, yes.

The Court:       And you understand what the possible penalties are of up to five years in prison and/or a fine of up to $5,000, if convicted. Do you understand that?

Petitioner:       I understand what the charge or the penalty is, yeah.

The Court:       In Count 2, it's alleged that you had a firearm in your possession at the time you were committing a felony.  That's the charge that's commonly called felony firearm.  The specific allegation is that you had a gun in your possession at the time you committed or attempted to commit another felony, which in this case would've been possession of a firearm by a felon, the charge in Count 1.  That's a separate charge that is punishable by a mandatory two years in prison that would run consecutive to any other sentence you receive.  Do you understand that charge? Understanding once again you don't agree

|  |  |
|---|---|
|  | with it, but you do understand the charge, correct? |
| Petitioner: | Correct. |
| The Court: | And you understand that's a maximum consecutive two year prison term. In fact, it's a mandatory two year prison term; do you understand that? |
| Petitioner: | I understand. |
| The Court: | And because you have a prior felony conviction, Mr. Budd, the prosecutor has also charged you with being a habitual offender. It's alleged, because of that prior felony conviction that you referred to, that was entered on May 6, 1991, if you were convicted of the charge of being a felon in possession of a firearm in this case, it would increase the maximum possible penalty from five years in prison to seven and a half years in prison. Do you understand that? |
| Petitioner: | I understand what the charges are, yeah. |
| The Court: | Once again, I understand that you don't agree with them, but I want to make sure you understand what you're charged with. Do you, sir? |
| Petitioner: | Yes, sir. |
| The Court: | So, that means that if we put this all together, Mr. Budd, if you were convicted and the Court imposed the maximum possible penalty it could, you'd be facing a possible nine and a half years in prison. You'd get the two years consecutive on the felony firearm, and then you'd get up to seven and a half years on the possession of a firearm by a felon with a habitual offense. Do you understand that? |

Petitioner:      Yeah.

The Court:       Knowing that you're facing the possibility of that type of a maximum prison sentence, Mr. Budd, is it still your desire to represent yourself in this case rather than have legal representation?

Petitioner:      Defend myself, your Honor, yes.

The Court:       Okay.  Do you understand, Mr. Budd, that if you represent yourself or defend yourself, as you said, you'll be held to the same rules of evidence that the prosecutor is held to, and the same rules of court procedure that the prosecutor is held to?  Do you understand that?

Petitioner:      Well, I don't completely understand that, your Honor, because I'm not an attorney and I don't claim to be, but I will defend myself to the best of my ability and with the knowledge that I have.

The Court:       Well, that's what I'm trying to point out to you, Mr.  Budd, the hazards of representing yourself in this case, because it is a serious case with serious potential consequences.  You are not breaking the law.  In my observation, you don't have a thorough understanding of either the law or the procedure, although you do better than many people do who represent themselves.     And   should   you   be convicted, the consequences could be very serious for you; do you understand that?

Petitioner:      I understand.

The Court:       I'm trying to indicate to you, Mr. Budd, that it's my belief that it is not in your best interest for you to represent yourself.  I think you should have a trained, skilled, criminal  defense  attorney,  which  Mr.

|            | Blackmond is.   And I want you to understand, sir, that if you represent yourself in this case, which you have a right to do, it could be at your own peril. Do you understand that? |
|------------|---|
| Petitioner: | I understand.   I'm satisfied with Mr. Blackmond and how he's assisted me up to this time. |
| The Court: | You still wish to represent yourself at trial? |
| Petitioner: | Defend myself, yes. |
| The Court: | And do you understand if you defend yourself, Mr. Budd, you will be going against either Mr. Sherman or one of his assistants, who are all trained and skilled criminal lawyers?  Do you understand that, sir? |
| Petitioner: | I understand that. |
| The Court: | Knowing that, is it still your decision that you want to defend yourself in this case? |
| Petitioner: | I want to defend myself, that's correct. |
| The Court: | And that's what you wish to do? |
| Petitioner: | That's correct. |
| The Court: | Are you satisfied that the Court has complied with MCR 6.005(D)(1), Mr. Sherman? |
| Mr. Sherman: | I guess the only thing I would like emphasized, and I know the Court did say this, but I think Mr. Budd's answer was a little bit equivocal, but Mr. Budd will be responsible to follow the rules of evidence and the rules of court procedure just as any lawyer would.   I know the Court |

asked that question of Mr. Budd, but I wasn't completely satisfied with the answer Mr. Budd gave. I want to make sure that he understands that the rules of evidence will apply to him just like they would any attorney and the rules of court procedure, and the Michigan Court Rules will apply to him just as they would with any lawyer.

The Court:      Do you understand that, Mr. Budd?

Petitioner:     I understand what he's saying, your Honor, yes.

The Court:      Well, I thought I had made that clear, and if I didn't -

Petitioner:     I thought you did.

The Court:      Knowing that, it's still your decision to defend yourself in this case?

Petitioner:     Correct.

The Court:      Satisfied Mr. Sherman?

Mr. Sherman: Yes, I am, your Honor.

The Court:      Are you satisfied that the Court's complied with the court rule, Mr. Blackmond?

Mr. Blackmond:        Yes, I am, your Honor.

The Court:      Mr. Sherman, is there anything else you want on the record at this time?

Mr. Sherman: Your Honor, just looking to the possibility of appellate review of a subsequent conviction at a later date, I would just like the record to reflect that Mr. Budd has represented himself on numerous occasions in this county and in other

counties for misdemeanor offenses. I can think of probably four or five jury trials Mr. Budd has represented himself at, some of which he's been convicted and some of which he's been acquitted. So, Mr. Budd does have substantially more experience in court that the average lay person does. And I just wanted to make sure that that's on the record in the event that an appellate court seeks review at a later date.

The Court:    Mr. Budd, is there anything else you want on the record at this time?

Petitioner:    I'm satisfied at this point in time, your Honor.

(Hearing Transcript, October 19, 1998, 8-14).

At the outset of trial, the trial judge engaged in a similar exchange with Petitioner to reiterate the potential dangers of representing himself. (Trial Transcript, December 9, 1998, 5-9). Petitioner nonetheless decided to represent himself.

As the discussion above clearly reveals, Petitioner's decision to forego the right to the assistance of counsel and represent himself in this matter was knowing, voluntary, and intelligent. Thus, this claim presents no issue on which habeas relief may be granted.

**IV.**        **Improper Bind-Over**  (Habeas Claim IV)

Petitioner asserts that because the district judge "was without authority" to bind him over on the two charges of which he was ultimately convicted, the trial court lacked jurisdiction under state law to try him in this matter. However, Petitioner's claim that the state court lacked jurisdiction under state law to conduct his criminal trial is a matter of state law which is not cognizable in a federal habeas

corpus proceeding. *See Strunk v. Martin*, 27 Fed. Appx. 473, 2001 WL 1450740 at *2 (6th Cir., Nov. 6, 2001) (citations omitted); *Gamez v. Jones*, 1999 WL 33483583 at *1 (W.D. Mich., Aug. 9, 1999); *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998); *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994).

## V.        Double Jeopardy  (Habeas Claim V)

The Fifth Amendment to the United States Constitution states that no person "shall. . .be subject for the same offense to be twice put in jeopardy of life or limb. . ."  The double jeopardy clause affords every criminal defendant three basic protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense.  *See Banner v. Davis*, 886 F.2d 777, 779 (6th Cir. 1989) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)).

Petitioner asserts that it violates the double jeopardy clause to punish him for (a) being a felon in possession of a firearm and (b) possessing a firearm during the commission of a felony. Whether punishments are "multiple" under the double jeopardy clause is "a question of legislative intent."  *Banner*, 886 F.2d at 779-80 (quoting *Ohio v. Johnson*, 467 U.S. 493, 499 (1983)).  When assessing the intent of a state legislature, "a federal court is bound by a state court's construction of that state's own statutes."  *Banner*, 886 F.2d at 780 (citing *Missouri v. Hunter*, 459 U.S. 359, 368 (1983)). Furthermore, "a state court's determination that a state legislature intended multiple punishments is binding in habeas corpus."  *Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir., Oct. 30, 2002).

Petitioner presented this claim in his direct appeal.  In rejecting this claim, the Michigan Court of Appeals stated the following:

> Our Supreme Court determined that the Legislature intended to impose
> multiple punishment for firearm offenses unless the underlying felony

-24-

> was one of only four specifically excluded by the statute. The excluded
> offenses do not include felon in possession of a firearm. Moreover the
> statutes have different purposes. The felon-in-possession statute is
> intended to protect the public from guns in the hands of previously
> convicted felons, while the purpose of the felony-firearm statute is to
> punish anyone who possesses a firearm while committing a felony. The
> former offense focuses on a specific category of criminal actor, while the
> latter focuses on a specific criminal act. Consequently, double-jeopardy
> protections are not violated here.

*People v. Budd*, Case No. 217194, Opinion at 1-2 (Mich. Ct. App., May 1, 2001) (internal citations omitted).

This conclusion is consistent with that reached by other courts facing the same question. *See Rodgers*, 49 Fed. Appx. at 597 (relying on Michigan authority, the court held that "the Michigan courts have held that convictions for both being a felon in possession of a firearm and possessing a firearm during the commission of a felony do not violate double jeopardy"). Accordingly, this claim presents no claim upon which habeas relief may be granted.

**VI.**      **Failure to Recuse**  (Habeas Claim VI)

Two days before the start of his trial in this matter, Petitioner filed a civil action in federal court against the trial judge. One day before the start of trial, Petitioner requested that the trial judge recuse himself on the ground that he was biased against Petitioner. Finding that Petitioner's motion was filed in bad faith, the judge denied Petitioner's motion. Specifically, the judge stated that:

> I, frankly, view this pleading that is filed purely for the purpose of
> delaying a trial that Mr. Budd doesn't want to happen. For that reason,
> I am not going to disqualify myself. I find no basis for disqualification.
> I find this lawsuit to be a lawsuit that's filed for one particular purpose,
> to-wit: to see that this trial does not go forward on December 9th. And
> I refuse to cave in to the defendant's attempt to abuse process, because
> that's what I view it as. For that reason, I will not disqualify myself and
> this trial will go forward tomorrow morning.

(Hearing Transcript, December 8, 1998, 23-24).

Petitioner asserts that the trial judge's refusal to recuse himself "denied his due process rights to a fair trial before an impartial judge." To establish that the trial judge was unconstitutionally biased against him, Petitioner must demonstrate that the judge possessed "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Brandt v. Curtis*, 138 Fed.Appx. 734, 741 (6th Cir., July 7, 2005) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Petitioner has presented no evidence to support his accusation that the trial judge was biased against him. To the contrary, the record reveals that the trial judge was incredibly patient with Petitioner and his continual attempts to use the criminal trial as a forum to relitigate the civil action which resulted in his eviction from Thompson's property. The Court finds that this claim presents no claim upon which habeas relief may be granted.

**VII.**         **Failure to Produce Res Gestae Witness** (Habeas Claim VII)

At the time of Petitioner's trial, the State of Michigan had in effect a rule which required the prosecutor to "attach to the filed information a list of all...res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers." Mich. Comp. Laws § 767.40a(1) (1998). This provision further provided that the "prosecuting attorney or investigative law enforcement agency shall provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process on a witness." Mich. Comp. Laws § 767.40a(5).

Petitioner asserts that the prosecuting attorney failed to exercise due diligence in attempting to locate and produce certain alleged res gestae witnesses. Petitioner asserts that this failure necessitates the reversal of his conviction. Under federal law, however, there exists no such

requirement. *See Smith v. Elo*, 1999 WL 1045877 at *2 (6th Cir., Nov. 8, 1999) (claim that prosecutor failed to call a res gestae witness is a state law issue not cognizable in federal habeas proceeding); *Moreno v. Withrow*, 1995 WL 428407 at *1 (6th Cir., July 19, 1995) (absent a denial of fundamental fairness, failure to call a res gestae witness is not cognizable in federal habeas proceeding); *Atkins v. Foltz*, 1988 WL 87710 at *2 (6th Cir., Aug. 24, 1988) ("federal law does not require the production of all res gestae witnesses").

The federal courts can only consider habeas claims alleging violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Petitioner's claim rests upon a perceived violation of state law, therefore, relief is available only if the alleged error deprived Petitioner of "fundamental fairness in the trial process." *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). However, because Petitioner has presented neither evidence nor argument that the witnesses at issue would have provided favorable testimony, he cannot establish that the alleged failure to secure their attendance at trial denied him of the right to a fair trial. *See Atkins*, 1988 WL 87710 at *1 (citing *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972)); *Thomas v. McLemore*, 2001 WL 561216 at *6 (E.D. Mich., Mar. 30, 2001) (citing *Atkins*, 1988 WL 87710 at *2 and *Bryant*, 461 F.2d at 916).

**VIII.       Denial of the Right to a Fair Trial** (Habeas Claims IX and X)

With respect to the charge that Petitioner unlawfully possessed a firearm as a prior felon, the trial court instructed the jury that "possession of a firearm may be found without actual admission of a firearm into evidence as long as a witness testifies that he saw the defendant in possession of a

firearm and you find beyond a reasonable doubt that there was a firearm." (Trial Transcript, December 11, 1998, 105). Petitioner claims this instruction denied him the right to a fair trial.

First, because this claim implicates the manner in which Michigan law has been interpreted it cannot serve as the basis for habeas relief. *See* 28 U.S.C. § 2254(a). Moreover, this claim is without merit as Michigan courts have long held that "possession" of a firearm can be established by testimonial evidence only. *See People v. Robbins*, 346 N.W.2d 333, 337 (Mich. Ct. App. 1984); *People v. Parker*, 2000 WL 33420602 at *1 (Mich. Ct. App., May 12, 2000).

Petitioner next claims that his right to a fair trial was denied because the "only prosecution witness that could identify the petitioner had a $100,000 interest in seeing the petitioner convicted." Petitioner is apparently referring to David Thompson and the fact that he disputes David Thompson's ownership of the property from which he was evicted.

First, Thompson was not the only person to identify Petitioner. As noted previously, Ivan Robinson testified that Petitioner threatened him (and Thompson) with a firearm when the pair attempted to enter the residence. There is no evidence that Robinson possesses any ownership interest in the residence. Thus, Petitioner's conviction is supported by the testimony of a witness without a "$100,000 interest in seeing the petitioner convicted." More importantly, the right to a fair trial is not denied by the mere allegation that a witness may possess an interest to testify less than truthfully. Instead, such matters are the subject for cross-examination. Petitioner vigorously explored this matter on cross-examination. That the jury nonetheless chose to credit Thompson's testimony did not deprive Petitioner of a fair trial. In sum, these claims are without merit.

**IX.**        **Denial of the Right of Access to the Courts**  (Habeas Claims XI and XII)

Petitioner asserts that his right to access the courts was denied where the trial court denied several of his post-conviction motions without a hearing.

It is well established that prisoners possess a constitutional right to access the courts. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (citing *Lewis v. Casey*, 518 U.S. 343 (1996)). This is not a generalized "right to litigate," however, but a right which extends only to direct appeals, habeas corpus applications, and civil rights claims. *See Thaddeus-X*, 175 F.3d at 391. Furthermore, to establish a violation of this right, the prisoner must establish that "he suffered an actual litigation related injury or legal prejudice because of the actions of the defendants." *Thomas v. Rochell*, 2002 WL 31096251 at *1 (6th Cir., Sep. 18, 2002) (citing *Lewis*, 518 U.S. at 349-51). Petitioner has not established that he suffered any litigation related injury or legal prejudice in this matter. Instead, Petitioner has demonstrated only that he disagrees with the trial court's ruling on his various motions. Such disagreement does not constitute injury or prejudice. These particular claims present no issue upon which habeas relief may be granted.

**X.**        **Ineffective Assistance of Appellate Counsel**  (Habeas Claims XIII and XIV)

Petitioner asserts that two of his appointed appellate attorneys rendered ineffective assistance by allegedly failing to move for evidentiary hearings and raise "dead bang ringer" claims.

To establish that his appellate counsels' performance was constitutionally deficient, Petitioner must first establish that their performance was so deficient that they were not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, it must be demonstrated that counsel's actions were unreasonable under prevailing

-29-

professional norms.  *Id.* at 688.  Petitioner must further establish that he suffered prejudice as a result of counsels' deficient performance.  *Id.* at 687.  This is a heavy burden for Petitioner to meet, because he must establish that his counsels' performance was "so <u>manifestly</u> ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 113 S. Ct. 2969 (1993) (emphasis in original); *see also, West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

The Court need not consider whether counsels' performance was deficient because Petitioner cannot establish that he suffered any prejudice as a result of counsels' alleged shortcomings. Petitioner faults his attorneys for not seeking an evidentiary hearing at which evidence of his "actual innocence" could have been presented.  Petitioner has failed, however, to present any evidence establishing (or even suggesting) that he was actually innocent of the crimes of which he was convicted. As for Petitioner's claim that his appellate attorneys failed to assert "dead bang ringer" claims, Petitioner has failed to identify any meritorious claim which has not been pursued.  Thus, these claims are without merit and present no issue on which habeas relief may be granted.


## <u>CONCLUSION</u>

For the reasons articulated herein, the Court concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly, the Court recommends that Budd's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  December 16, 2005                              /s/ Ellen S. Carmody
                                                                ELLEN S. CARMODY
                                                                United States Magistrate Judge